UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| ROBERT A. MARTIN, THOMAS D. MORGAN, RAY JACKSON MEADOWS, CHARLIE CONNER, STEPHEN KING, EDWARD RIDER, CHARLES MOONEY, JOHNY BURGESS, ROGER LEGG, JEFFREY HILL, GREG WRIGHT, DON SPRADLING, AARON SPRADLING, CRAIG ERVIN, and RONNIE L. BARKER, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>GORDON BALL, DANIEL COHEN, CUNEO GILBERT & LADUCA, L.L.P., U. S. SOMEKELESS TOBACCO COMPANY, UNITED STATES TOBACCO SALES AND MARKETING COMPANY INC., UNITED STATES TOBACCO MANUFACTURING COMPANY INC., and UST INC.,<br><br>Defendants. | ) | FILED<br>JUL - 7 2006<br>U.S. DISTRICT COURT<br>WHEELING, WV 26003<br><br>5: 06-CV-85 |

## COMPLAINT

### Introduction

This is a class action lawsuit to enforce the terms of a class action settlement that was finally approved by a Tennessee state court in July 2004, and that was amended without notice to the class on July 7, 2005.

### Jurisdiction

1. Federal jurisdiction over this class action exists pursuant to 28 U.S.C. §1332(d)(2), in that the amount in controversy exceeds $5,000,000, the plaintiff class members reside in the states of Tennessee, Florida, Arizona, West Virginia, North Carolina, Nevada, New Mexico, South Dakota, North Dakota, Hawaii, Vermont, Iowa, Mississippi and the

District of Columbia, and the Defendants are citizens of Connecticut, Tennessee and the District of Columbia.

## Parties

2. The named Plaintiffs are all residents of West Virginia and members of the class in the action captioned Davis v. United States Tobacco Company et al., Circuit Court for Jefferson County, Tennessee, Civil Action No. 17305 II ("Davis Action"). Each of the Plaintiffs filed a claim for settlement benefits in the Davis Action, and is therefore eligible for additional benefits pursuant to a Most Favored Nations Clause ("MFN Clause") contained in the Stipulation of Settlement that was finally approved in the Davis Action.

3. Plaintiff Robert A. Martin is a resident of Barboursville, West Virginia. Plaintiff Martin filed a claim for settlement benefits in the Davis Action.

4. Plaintiff Thomas D. Morgan is a resident of Charleston, West Virginia. Plaintiff Morgan filed a claim for and received settlement benefits in the Davis Action.

5. Plaintiff Ray Jackson Meadows is a resident of Canvas, West Virginia. Plaintiff Meadows filed a claim for and received settlement benefits in the Davis Action.

6. Plaintiff Charles Conner is a resident of Moundsville, West Virginia. Plaintiff Conner filed a claim for and received settlement benefits in the Davis Action.

7. Plaintiff Stephen King is a resident of Nitro, West Virginia. Plaintiff King filed a claim for and received settlement benefits in the Davis Action.

8. Plaintiff Edward Rider is a resident of Cedar Grove, West Virginia. Plaintiff Rider filed a claim for and received settlement benefits in the Davis Action.

9. Plaintiff Charles Mooney is a resident of Peytona, West Virginia. Plaintiff Mooney filed a claim for and received settlement benefits in the Davis Action.

10. Plaintiff Johnny Burgess is a resident of Danville, West Virginia. Plaintiff Burgess filed a claim for and received settlement benefits in the Davis Action.

11. Plaintiff Roger Legg is a resident of Cedar Grove, West Virginia. Plaintiff Legg filed a claim for and received settlement benefits in the Davis Action.

12. Plaintiff Jeffrey Hill is a resident of Marlinton, West Virginia. Plaintiff Hill filed a claim for and received settlement benefits in the Davis Action.

13. Plaintiff Greg Wright is a resident of South Charleston, West Virginia. Plaintiff Wright filed a claim for and received settlement benefits in the Davis Action.

14. Plaintiff Don Spradling is a resident of Cross Lanes, West Virginia. Plaintiff Don Spradling filed a claim for and received settlement benefits in the Davis Action.

15. Plaintiff Aaron Spradling is a resident of Cross Lanes, West Virginia. Plaintiff Aaron Spradling filed a claim for and received settlement benefits in the Davis Action.

16. Plaintiff Craig Ervin is a resident of East Bank, West Virginia. Plaintiff Ervin filed a claim for and received settlement benefits in the Davis Action.

17. Plaintiff Ronnie L. Barker is a resident of Costa, West Virginia. Plaintiff Barker filed a claim for and received settlement benefits in the Davis Action.

18. Defendant Gordon Ball is an attorney licensed to practice in the State of Tennessee, with a principal place of business located at 550 West Main Street, Knoxville, Tennessee. Defendant Ball is one of the attorneys who represented the plaintiff class in the Davis Action.

19. Defendant Daniel Cohen is an attorney licensed to practice in the State of Florida and is a member of the law firm Cuneo Gilbert & LaDuca L.L.P., which has a principal place of business located at 507 C Street NE, Washington, DC. Defendant Cohen is one of the attorneys who represented the plaintiff class in the Davis Action.

20. Defendant Cuneo Gilbert & LaDuca L.L.P. is a law firm with a principal place of business located at 507 C Street NE, Washington DC. Defendant Cuneo Gilbert & LaDuca L.L.P. (fka/ Cuneo Waldman & Gilbert L.L.P.) is counsel for the plaintiff class in the Davis Action.

21. Defendant U.S. Smokeless Tobacco Company is a corporation organized under the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut, and is a wholly owned subsidiary of Defendant UST, Inc. Defendant U.S. Smokeless Tobacco Company was formerly known as, and is the successor in interest to, the United States Tobacco Company.

22. Defendant United States Tobacco Sales and Marketing Company, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut, and is a wholly owned subsidiary of Defendant UST Inc.

23. Defendant United States Tobacco Manufacturing Company, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut, and is a wholly owned subsidiary of Defendant UST Inc.

24. Defendant UST Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut.

## Facts

25. Defendants U.S. Smokeless Tobacco Company, United States Tobacco Sales and Marketing Company, Inc., United States Tobacco Manufacturing Company, Inc., and UST Inc. (the "UST Defendants") are engaged in the business of manufacturing and selling chewing tobacco products, also known as "moist snuff" or "smokeless" tobacco.

26. In February 2000, competitor Conwood Company LP obtained a judgment against the UST Defendants for unlawful monopolization in the chewing tobacco market in

violation of §2 of the Sherman Act (the "Conwood Judgment"). On May 15, 2002, the United States Court of Appeals for the Sixth Circuit affirmed that judgment.

27. Following the Conwood Judgment, several consumers of chewing tobacco filed putative class actions against the UST Defendants in various states around the country for damages arising from the factual findings in the Conwood Judgment.

28. One of the consumer class actions was filed by Philip Edward Davis in the Circuit Court for Jefferson County, Tennessee, Civil Action No. 17305 II, on behalf of himself and all other chewing tobacco users residing in Tennessee.

29. On April 14, 2004, the Defendants entered into a settlement of the Davis Action, which had been amended to include consumers who had purchased Defendants' products between January 1, 1990 and April 14, 2004 in the states of Arizona, Florida, Hawaii, Iowa, Mississippi, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and the District of Columbia. See Stipulation of Settlement attached hereto as Exhibit B. Defendants Gordon Ball and Daniel Cohen signed the settlement on behalf of class plaintiffs.

30. The named representative for all class members residing in West Virginia was Matthew Filben. Mr. Filben's name was added to the Davis caption without Mr. Filben's knowledge. Davis class counsel never contacted Mr. Filben about the case. Mr. Filben was not aware of the Davis Action, and did not approve of or consent to the settlement of the Davis Action. See Exhibit C.

31. The Settlement of the Davis Action was based upon a settlement value of 7 cents per can of Defendants' chewing tobacco sold in the covered states during the Davis class period. See Exhibit B at p. 17.

32. The benefits offered to Davis class members by the Davis settlement were in the form of coupons which could be exchanged for a discount on the purchase of UST chewing tobacco products. The coupons were in denominations of $3.00 and $1.00. See Exhibit B.

33. The maximum value of the Davis Settlement coupons was $31,322,484, and the minimum guaranteed distribution was 40% of that amount, or $12,528,993.

34. ¶ 9.3 of the Davis Stipulation of Settlement provides as follows:

> In the event that the Defendants settle any other indirect purchaser case arising from the events that are the subject of this litigation in an amount greater than seven (7) cents per can ... the Defendants shall distribute to Claimants in this action additional Coupons for U.S. Smokeless Tobacco moist smokeless tobacco products to ensure that the Settlement Class receives coupons with an aggregate value equal to the aggregate value of coupons distributed in the other indirect purchaser settlement.

This clause is referred to informally as the "Most Favored Nations (MFN) Clause."

35. At the time of the settlement of the Davis Action, there were several other pending putative and certified class actions brought on behalf of indirect purchasers residing in other states around the country, chief among those the actions pending in Kansas and California. The Kansas and California actions were the only ones certified to proceed as class actions in April 2004. See UST Inc.'s May 6, 2004 10-Q, pp. 9,10 and 17, attached hereto as Exhibit A.

36. During late 2003 and early 2004, the 7 cents per can settlement offer accepted by the Davis class counsel was offered to counsel for the plaintiffs in several other pending consumer class actions against UST for the same conduct, including counsel for the certified Kansas and California classes. Counsel in each of those other actions rejected the 7 cents per can settlement offer as being grossly inadequate.

37. Several objectors filed objections to the proposed settlement of the Davis Action, arguing that the 7 cents per can settlement figure grossly inadequate. One expert, Dr. David R.

Kamerschen, filed an affidavit in support of one objection stating that, in his opinion, the amount of price increase on a can of chewing tobacco as a result of the monopolistic conduct found in Conwood was 50% of retail price, or as much as $1.50 per can for a $3.00 can of chewing tobacco.

38. The MFN Clause was included in the Davis settlement specifically to protect the class against the possibility that another class action would later settle for better terms and render the Davis settlement comparatively inferior and inadequate.

39. Judge Richard Vance approved the Davis settlement on July 20, 2004, see Exhibit D, and awarded Davis class counsel the amount of $6.08 million in fees and expenses. See Exhibit E.

40. Davis class counsel represented to the Tennessee court that the settlement coupons are as good as cash, and have a cash value equal to their face value. See Exhibit E. The Tennessee court awarded an attorney's fee to Davis class counsel that assigned to the coupons a cash value equal to their face value. Id.

41. 159,489 class members in the Davis Action filed valid claim forms for the coupons offered through the Davis settlement. See Exhibit F. Each claimant received a total of $79 worth of coupons, pursuant to the settlement's provision requiring minimum distribution of 40% of the settlement's value.

42. By June 23, 2005, UST had entered into a settlement of the previously-certified Kansas class action against it for the amount of $1.28 per can, or 18.3 times greater than the amount that the Davis class had recovered. See Exhibit G at p.7.

43. The Kansas class action was settled along with a New York class action. The Kansas/NY maximum settlement value is $60 million worth of coupons, and the minimum guaranteed value of coupons is $24 million. See Exhibit H.

44. Under the terms of the Kansas/NY settlement, each Kansas class member is entitled to a minimum of $657 worth of coupons, subject to upward adjustment if the 40% minimum guarantee is not met. See Exhibit H.

45. As of June 23, 2005, the Davis class was entitled to an additional $216.7 million in coupons, by virtue of the MFN Clause and the Kansas/NY settlement, based upon the relative per-can settlement amounts.

46. As of June 23, 2005, each of the Plaintiffs and every similarly situated Davis class member was entitled to an additional $1359 in coupons, by virtue of the MFN Clause and the Kansas/NY settlement.

47. In the alternative, as of June 23, 2005, the Plaintiffs and similarly situated Davis class members were entitled to an additional $11,471,007 worth of coupons by virtue of the MFN Clause and the Kansas/NY settlement.

48. On July 7, 2005, Defendants Gordon Ball and UST signed an Order Allowing Amendment to Final Settlement that caused the MFN Clause to expire as of that date. The Order Allowing Amendment prejudiced the existing rights of class members by reducing the amount owed to class members under the MFN Clause and the Kansas/NY settlement from between $11 million to $216 million in coupons to $2.5 million in coupons, as well as eliminating the ability of class members to benefit from any other future settlements of indirect purchaser class actions. In consideration for relinquishing these rights of class members, Davis class counsel received a payment of $500,000 in additional attorney's fees. See Exhibit I.

49. Neither prior to nor after amendment of the settlement was notice provided to Davis class members, in violation of their Constitutional Due Process rights.

50. Davis class counsel never contacted West Virginia lead plaintiff Matthew Filben, either prior to or after the amendment of the settlement. Mr. Filben neither consented to nor approved of that amendment. See Exhibit C.

51. Upon information and belief, Davis class counsel did not contact any of the named class representatives prior to agreeing to the amendment of the settlement, nor did it obtain their approval or consent thereto.

52. The amendment to the settlement resulted in each Davis class member who registered to receive coupons in that action receiving approximately $16 in additional coupons, instead of between $72 and $1359.

53. Each Plaintiff and similarly situated class member in this action was damaged in the amount of between $56 and $1343 as a result of the July 7, 2005 amendment of the Davis settlement.

54. On March 7, 2006, the Kansas class action settlement received final approval. See Exhibit J.

**Class Action Allegations**

55. Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of themselves and the 159,489 similarly situated Davis class members who filed claims for coupons in the case Philip Edward Davis v. United States Tobacco Co. et al., Civil Action No. 17305 II, Circuit Court for Jefferson County, Tennessee, (the "Class"). All of the Class members reside in the states of Tennessee, Florida, Arizona, West Virginia, North Carolina, Nevada, New Mexico, South Dakota, North Dakota, Hawaii, Vermont, Iowa, Mississippi and the District of Columbia. All of the Class members are current or former consumers of the UST Defendants' chewing tobacco products.

56. There are exactly 159,489 Class members, the names and addresses of whom are all known and in the possession of Rust Consulting Inc. and the UST Defendants. See Exhibit F. Therefore, the Class is so numerous that joinder of all Class members is impracticable.

57. The fifteen named Plaintiffs are typical of the entire Class. Each of the named Plaintiffs and each Class member is a party to the Davis settlement agreement. This case is brought to enforce the terms of that agreement, for breach of that agreement, and for breach of fiduciary duty related to the purported amendment of that agreement. Each Class member has the same interest in receiving the benefits to which he or she is entitled by virtue of the MFN clause and the Kansas/NY settlement.

58. The fifteen named Plaintiffs will fairly and adequately protect the interests of the Class. No Plaintiff is subject to a unique defense that would detract from his pursuit of this litigation. The Plaintiffs have retained as Class counsel attorney John J. Pentz of the Class Action Fairness Group of Maynard, Massachusetts, who represented an objector to the Davis settlement, as well as an objector to the Kansas/NY settlement. Attorney Pentz is therefore very familiar with the UST consumer class actions. Attorney Pentz has specialized for the past seven years in the representation of individual class members in class action litigation, and in the identification of and opposition to class action fraud and inadequate representation, especially in the settlement context. The Plaintiffs have also retained attorney J. Scott Kessinger of St. Louis, Missouri. Attorney Kessinger has represented numerous objectors to class action settlements. The Plaintiffs have retained as local West Virginia counsel attorney C. Richard Wilson of Wilson & Lantz of Moundsville, West Virginia. Attorney Wilson was the original attorney for Matthew Filben, the West Virginia resident whose name was used to effect a

settlement of the claims of West Virginians in the Davis Action. Attorney Wilson was involved in the filing of a West Virginia state court action against UST on behalf of Mr. Filben in 2001.

Finally, no other Class members have stepped forward to assert the interests of the Class members in this action. It is not clear that any other Class member has even learned of the July 7, 2005 amendment of the Davis settlement, or their rights to additional coupons as a result of the Kansas/NY settlement.

59. All of the questions of law and fact in this action are common to the Class. Each Class member is entitled to identical *pro rata* benefits from the Davis settlement. Each Class member's claim is governed by the Davis settlement agreement and the identical law. Common issues of law and fact completely predominate, and there are no individual issues. Resolution of the claims of any one Class member will resolve the claims of all of them.

60. Each Class member is a member of the previously certified Davis class. The putative Class in this action is a subset of the certified Davis class – namely, those Davis class members who filed claims for coupons. See Exhibit F.

61. Adjudication of this matter with respect to the fifteen named Plaintiffs would, as a practical matter, be dispositive of the interests of the other Class members. Each named Plaintiff or Class member is entitled to receive additional coupons only as his or her *pro rata* share of the total additional amount of coupons that UST is required to distribute pursuant to the MFN Clause. Therefore, in order to recover, each named Plaintiff and Class member would first have to establish the amount by which the Davis settlement fund must be increased as a result of the Kansas/NY settlement, and then claim his or

her *pro rata* share of that amount. In so doing, he or she would necessarily establish the amount to which each other Class member is entitled.

62. In addition, common questions of law or fact predominate over individual issues, and this class action is superior to any alternative method of adjudication. No other Davis class members have stepped forward to enforce the MFN Clause, and no other lawsuits have been commenced to enforce the Davis settlement. This is an appropriate forum because (1) this multistate class action belongs in a federal forum; and (2) West Virginia is an appropriate forum because West Virginia class members were not provided with adequate notice about the Davis settlement and the July 7, 2005 amendment. Finally, there are no difficulties likely to be encountered in the management of this action, because there are no individual issues or conflict of law issues.

**COUNT I**

**Breach of Contract - Against UST Defendants**

63. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1- 62 above.

64. Pursuant to the Davis Stipulation of Settlement, the UST Defendants were required to distribute to each of the named Plaintiffs and all similarly situated Class members a denomination of coupons necessary to ensure that the Davis claimants receive coupons with an aggregate value equal to the aggregate value of coupons distributed in other indirect purchaser settlements.

65. The UST Defendants entered into a settlement of the Kansas class action for the amount of $1.28 per can and a minimum guaranteed value of $24 million on or about June 23, 2005, when they signed an MOU with the Kansas class counsel. At that point, the UST Defendants were obligated to distribute to the Plaintiffs and the Class the equivalent value of coupons necessary to transform the Davis action into a settlement for $1.28 per

can, or 18.3 times the guaranteed minimum value of the Davis settlement. In the alternative, the UST Defendants were obligated to distribute to the Plaintiffs sufficient coupons to bring the total value of coupons distributed to the Plaintiffs and the Class to $24 million.

66. As of June 23, 2005, the UST Defendants owed Plaintiffs and the Class an amount of between $11,471,007 and $216.7 million.

67. By amending the Davis settlement on June 7, 2005, the UST Defendants committed an anticipatory breach of the Davis Stipulation of Settlement, and/or repudiated the Stipulation of Settlement.

68. The $11,471,007 to $216.7 million owed to Plaintiffs and the Class became due and payable on March 7, 2006, the date on which the Kansas settlement was finally approved.

69. The UST Defendants have failed to distribute to Plaintiffs and the Class members $11,471,007 to $216.7 million of additional coupons, in breach of the MFN Clause and the Davis Stipulation of Settlement.

70. As a direct result of the UST Defendants' breach of the Davis Stipulation of Settlement, Plaintiffs and Class members have been damages in the amount of between $8,971,007 and $214.2 million.

**<u>COUNT II</u>**

**Breach of Fiduciary Duty – Against Defendants Gordon Ball, Daniel Cohen and <u>Cuneo Gilbert and LaDuca L.L.P.</u>**

71. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1- 70 above.

72. As class counsel in the Davis class action, Defendants Gordon Ball, Daniel Cohen and Cuneo Gilbert and LaDuca L.L.P. ("Davis Class Counsel") owe a fiduciary duty to the Davis class members.

73. Davis Class Counsel breached their fiduciary duty to the Davis class members in numerous ways.

74. Davis Class Counsel breached their fiduciary duty to the Plaintiffs and all West Virginia Davis class members by failing to communicate to Matthew Filben the fact of the settlement of the Davis action or the substance of the Davis settlement, and by failing to seek his consent to the Davis settlement, all in violation of Tennessee Rules of Professional Conduct 1.2(a), 1.4 and 1.8.

75. Davis Class Counsel breached their fiduciary duty to the Plaintiffs and the Class by failing to provide notice to the Davis class prior to entering into the July 7, 2005 amendment to the Davis settlement, in violation of the Davis class members' due process rights.

76. Davis Class Counsel breached their fiduciary duty to the Plaintiffs and all West Virginia Davis class members by failing to communicate to Matthew Filben the substance of the proposed amendment prior to agreeing to the July 7, 2005 amendment.

77. Davis Class Counsel breached their fiduciary duty to the Davis class members by accepting a payment of $500,000 in attorney's fees in exchange for amending the Davis settlement in a manner that deprived the Davis class members of between $8,971,007 and $214.2 million of benefits. Davis Class Counsel violated Tennessee Rule of Professional Conduct 1.8 in accepting a $500,000 payment from the UST Defendants without obtaining their clients' consent after consultation.

78. When UST approached Davis Class Counsel with an offer to pay them $500,000 in additional attorney's fees in exchange for an agreement to liquidate the MFN Clause for an additional $2.5 million in coupons, Davis Class Counsel either knowingly entered into a fraudulent transaction in flagrant violation of their fiduciary duty to class members for the purpose of enriching themselves at the expense of their clients, or recklessly failed to perform due diligence to determine the purpose of UST's offer. Davis Class Counsel knew or should have known of the Kansas settlement and the per-can damages figure used to arrive at the total Kansas settlement amount, or should have undertaken efforts to discover those facts.

79. As a direct result of Davis Class Counsel's breach of fiduciary duty, Plaintiffs and Class members were damaged in the amount of between $8,971,007 and $214.2 million.

## COUNT III

## Unjust Enrichment – Against the UST Defendants

80. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1- 79 above.

81. The UST Defendants are bound by the Davis Stipulation of Settlement, which was finally approved on July 20, 2004. As of that date, the UST Defendants were obligated to provide to the Davis class all of the benefits described in that agreement, including any and all benefits conferred by the Most Favored Nations Clause. Even though those benefits could not be quantified until and unless UST settled the other pending consumer class actions against it, UST was in full control of any such outcome.

82. Davis class members had a fully vested entitlement to the benefits conferred by the MFN Clause as of July 20, 2004, when the Tennessee court entered its Final Judgment, Exhibit D.

83. On or around June 23, 2005, when the UST Defendants entered into an MOU with the Kansas class counsel, UST was obligated to pay the Davis class members an additional $11,471,007 to $216.7 million of coupons.

84. When the UST Defendants approached Davis Class Counsel to solicit their agreement to the July 7, 2005 amendment, the UST Defendants failed to disclose to Davis Class Counsel the existence of the MOU with Kansas class counsel or the per-can settlement amount of the Kansas settlement.

85. The UST Defendants bribed Davis Class Counsel to breach their fiduciary duty to their clients.

86. But for the malfeasance and breach of fiduciary duty of Davis Class Counsel, which was solicited by the UST Defendants, the UST Defendants would have been obligated to pay the Davis class members an additional $11,471,007 to $216.7 million, pursuant to the MFN Clause.

87. It was improper for the UST Defendants to solicit Davis Class Counsel's breach of fiduciary duty by offering Davis Class Counsel $500,000 in additional attorney's fees in exchange for selling out their clients.

88. When the UST Defendants sought the court's approval of the July 7, 2005 amendment, the UST Defendants failed to disclose to the Tennessee court the existence of the MOU with Kansas class counsel or the per-can settlement amount of the Kansas settlement, thus committing a fraud on the court.

89. It is improper for the UST Defendants to retain the benefits of Davis Class Counsel's malpractice, breach of fiduciary duty and violations of the Tennessee Rules of Professional Conduct, all of which were solicited by the UST Defendants.

90. The UST Defendants have been unjustly enriched by Davis Class Counsel's malpractice, breach of fiduciary duty and violations of the Tennessee Rules of Professional Conduct, which were solicited by the UST Defendants, in the amount of between $8,971,007 and $214.2 million.

91. The UST Defendants should be required to disgorge their ill-gotten gains by paying to the Plaintiffs and Class members the amount of $8,971,007 to $214.2 million.

**COUNT IV**

**Unjust Enrichment - Against Davis Class Counsel**

92. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1- 91 above.

93. On July 20, 2004, the Tennessee court awarded Davis Class Counsel attorney's fees and expenses in the amount of $6.08 million, as full compensation for their services in achieving the Davis settlement, which included the MFN Clause. The court awarded Davis Class Counsel 16% of the total value of the Davis settlement.

94. On or about July 7, 2005, the UST Defendants paid Davis Class Counsel an additional amount of $500,000, specifically as consideration for Davis Class Counsel's agreement to breach their fiduciary duty to the Davis class, and to amend the Davis settlement in a manner that cost their clients between $8,971,007 and $214.2 million.

95. Had Davis Class Counsel refused to amend the settlement as proposed by UST, the Davis class would have received an additional $11,471,007 to $216.7 million, but Davis Class Counsel would have had no claim to any additional attorney's fees, because it had already been fully compensated for achieving the Davis settlement, including the MFN Clause, in July 2004.

96. Davis Class Counsel did not earn an additional $500,000 in attorney's fees by agreeing to breach their fiduciary duty to the Davis class members, by failing to perform due diligence and by failing to know the applicable law.

97. The payment of $500,000 by the UST Defendants to Davis Class Counsel was essentially an undisclosed bribe to Davis Class Counsel for selling out their clients in a manner that created a windfall for the UST Defendants.

98. Davis Class Counsel never provided notice to the Davis class members or to the Davis named plaintiffs of the payment to them of an additional $500,000 on or about July 2005, in violation of Tennessee Rule of Professional Conduct 1.8.

99. Davis Class Counsel has been unjustly enriched by the payment to them of $500,000 by the UST Defendants on or about July 2005.

100. The Davis Class Counsel should be required to disgorge their ill-gotten gains by paying to the Plaintiffs and the Class members the amount of $500,000.

**COUNT V**

**Conversion – Against Davis Class Counsel**

101. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1- 100 above.

102. Davis class members had a fully vested entitlement to the benefits conferred by the MFN Clause as of July 20, 2004, when the Tennessee court entered its Final Judgment, Exhibit D.

103. On or about July 7, 2005, Davis Class Counsel converted the benefits conferred by the MFN Clause on Plaintiffs and the Class to their own benefit in the form of additional attorney's fees of $500,000, as consideration for their agreement to breach their fiduciary duty to the Davis class, and to amend the Davis settlement in a manner that cost their clients between $8,971,007 and $214.2 million.

104. The MFN Clause was an asset owned by the Plaintiffs and the Class with a value of between $11,471,007 to $216.7 million as of July 7, 2005. Davis Class Counsel assumed ownership and possession of that asset with the intent to exercise control when it traded that asset for $2.5 million worth of additional coupons and a $500,000 payment to itself. Davis Class Counsel thereby converted between $8,971,007 and $214.2 million worth of class assets into $500,000 of additional attorney's fees for themselves.

105. Davis Class Counsel's actions in converting the MFN Clause benefits are no different than an attorney selling a client's assets held in trust and pocketing the proceeds.

106. The Plaintiffs and Class members have been damaged in the amount of between $8,971,007 and $214.2 million as a result of Davis Class Counsel's conversion of their rights under the MFN Clause.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court grant them the following relief:

1. Certify this case as a class action under Fed. R. Civ. P. 23 on behalf of all Davis class members who filed a claim for settlement coupons, appoint the fifteen named Plaintiffs as lead Plaintiffs, and designate John J. Pentz, J. Scott Kessinger, and C. Richard Wilson as co-lead counsel for the Class;

2. Enter judgment against the Defendants, jointly and severally, in favor of Plaintiffs and the Class in the amount of between $8,971,007 and $214.2 million;

3. In the alternative, enter judgment against the UST Defendants in favor of Plaintiffs and the Class in the amount of between $8,971,007 and $214.2 million; or

4. In the alternative, enter judgment against the Davis Class Counsel Defendants in favor of Plaintiffs and the Class in the amount of between $8,971,007 and $214.2 million;

5. Order the UST Defendants to disgorge the $8,971,007 to $214.2 million they have retained as a result of the July 7, 2005 amendment to the Davis settlement;

6. Order the Davis Class Counsel Defendants to disgorge the $500,000 they have retained as a result of the July 7, 2005 amendment to the Davis settlement;

7. Award punitive damages to Plaintiffs and the Class;

8. Award reasonable attorney's fees to Plaintiffs and the Class; and

9. Order such other relief to which the Plaintiffs may be entitled.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Fifteen West Virginia Plaintiffs,
By their attorneys,

C. Richard Wilson
(responsible local counsel)
WV Bar # 5748
Wilson & Lantz PLLC
515 Jefferson Avenue
Moundsville, WV 26041
(304) 843-2300

John J. Pentz, *pro hac vice*
application pending
Class Action Fairness Group
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (707) 276-2925

J. Scott Kessinger, *pro hac vice*
application pending
7304 Michigan Avenue
St. Louis, MO 63111
(314) 369-5115