IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ROBERT A. MARTIN, THOMAS D. MORGAN,
RAY JACKSON MEADOWS, CHARLIE CONNER,
STEPHEN KING, EDWARD RIDER,
CHARLES MOONEY, JOHNNY BURGESS,
ROGER LEGG, JEFFREY HILL, GREG WRIGHT,
DON SPRADLING, AARON SPRADLING,
CRAIG ERVIN and RONNIE L. BARKER,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.                             Civil Action No. 5:06CV85
                                         (STAMP)

GORDON BALL, DANIEL COHEN,
CUNEO GILBERT & LADUCA, L.L.P.,
U.S. SMOKELESS TOBACCO COMPANY,
UNITED STATES TOBACCO SALES AND
MARKETING COMPANY, INC.,
UNITED STATES TOBACCO MANUFACTURING
COMPANY, INC., and UST, INC.,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO DISMISS**
**BY DEFENDANT GORDON BALL,**
**GRANTING MOTION TO DISMISS BY DEFENDANTS**
**DANIEL COHEN AND CUNEO GILBERT & LADUCA, L.L.P.,**
**AND GRANTING MOTION TO DISMISS BY DEFENDANTS**
**U.S. SMOKELESS TOBACCO COMPANY,**
**UNITED STATES TOBACCO SALES AND MARKETING COMPANY, INC.,**
**UNITED STATES TOBACCO MANUFACTURING COMPANY, INC.**
**AND UST, INC.**


I.  Procedural History


On July 7, 2006, the plaintiffs brought this action to enforce

the terms of a settlement agreement which was reached in a consumer

class action brought in the Circuit Court for Jefferson County,

Tennessee (Davis, et al. v. United States Tobacco Co., et al.,

Civil Action No. 17305 II (Cir. Ct. Jefferson County, Tenn.)("the _Davis_ action")). The defendants in this action include the defendants in the _Davis_ action (U.S. Smokeless Tobacco Company, United States Tobacco Sales and Marketing Company, Inc., United States Tobacco Manufacturing Company, Inc., and UST, Inc.);[1] two of the attorneys who represented the _Davis_ class plaintiffs (Gordon Ball and Daniel Cohen); and the law firm of which _Davis_ class plaintiff attorney Daniel Cohen is a member (Cuneo, Gilbert & LaDuca, L.L.P.).[2] The plaintiffs are West Virginia citizens who are consumers of smokeless tobacco products manufactured and sold by the UST defendants and who were represented by the _Davis_ class counsel defendants in the _Davis_ consumer class action.

The plaintiffs' five-count complaint alleges breach of contract and unjust enrichment against the UST defendants, and breach of fiduciary duty, unjust enrichment, and conversion against the _Davis_ class counsel defendants. The following motions are currently pending before this Court: the UST defendants' motion to

---

[1]This Court will refer collectively to U.S. Smokeless Tobacco Company, United States Tobacco Sales and Marketing Company, Inc., United States Tobacco Manufacturing Company, Inc., and UST, Inc. as "the UST defendants."

[2]The plaintiffs have raised the same claims against and alleged the same misconduct by defendants Gordon Ball, Daniel Cohen, and the law firm of Cuneo Gilbert & LaDuca, L.L.P. However, defendant Ball has filed responsive pleadings separately from defendants Cohen and Cuneo Gilbert & LaDuca, L.L.P. Accordingly, this Court will refer to these defendants collectively as "the _Davis_ class counsel defendants" and separately as "defendant Ball" and "the Cohen and Cuneo defendants."

dismiss, or, alternatively, for judgment on the pleadings;
defendant Ball's motion to dismiss; and the Cohen and Cuneo
defendants' motion to dismiss.    All of the defendants have
requested oral argument on their motions.    The defendants' motions
have been fully briefed and are now ready for disposition.    For the
reasons set forth below, this Court finds that the Circuit Court
for Jefferson County, Tennessee is the proper jurisdiction for this
action.    Therefore, the defendants' respective motions to dismiss
should be granted and their requests for oral argument should be
denied as moot.

## II.  Facts

As background, Philip Edward Davis, represented by the _Davis_
class counsel, filed a class-action lawsuit in the Circuit Court
for Jefferson County, Tennessee ("the Tennessee court") on behalf
of, among others, all persons residing in the States of Tennessee
and West Virginia who had purchased U.S. Smokeless moist snuff from
retailers or other indirect outlets.[3]    The _Davis_ action alleged
that the UST defendants had engaged in sales practices which
violated antitrust laws, consumer protection laws, or both, and
which prevented consumers from purchasing moist snuff in a
competitive market, thereby causing consumers to pay higher prices
for moist snuff.

---

[3]The named plaintiff and class representative for West
Virginia consumers was Matthew Filben, who is not a party to this
action.

On April 14, 2004, counsel for the UST defendants and counsel for the _Davis_ class plaintiffs reached an agreement settling the _Davis_ class plaintiffs' claims. Of particular relevance to the action before this Court is Paragraph 9.3 of the _Davis_ parties' Stipulation of Settlement, which contains what is commonly known as a "most-favored nations," or "MFN," clause. Pursuant to that clause, if the UST defendants subsequently settled any other indirect purchaser lawsuit for an amount greater than that in the _Davis_ case, or agreed to distribute coupons in an amount greater than 40% of the total value of the _Davis_ settlement, the UST defendants would distribute coupons to the _Davis_ settlement class "with an aggregate value equal to the aggregate value of coupons distributed in the other purchaser settlement."[4] The settlement agreement contained no expiration date for the MFN provision.

---

[4]In its entirety, the MFN clause provides:

In the event that the Defendants [UST] settle any other indirect purchaser case arising from the events that are the subject of this litigation in an amount greater than seven (7) cents per can, or guarantee to distribute in such settlement coupons in an amount greater than 40% of the total value of that settlement, the Defendants shall distribute to the Claimants in this action additional Coupons for U.S. Smokeless Tobacco moist smokeless tobacco products to ensure that the Settlement Class receives coupons with an aggregate value equal to the aggregate value of coupons distributed in the other indirect purchaser settlement.

Compl. Ex. B at 42.

In addition to the MFN clause, other provisions of the Stipulation of Settlement relevant to this action are found in Article IX, entitled, "Conditions of Settlement, Effect of Disapproval, Cancellation or Termination," and in Article X, entitled, "Miscellaneous Provisions." In Article IX, Paragraph 9.6(i), the parties agreed that the Circuit Court for Jefferson County, Tennessee would "retain jurisdiction of all matters relating to (a) the Litigation Escrow Account; (b) the Settlement; (c) all matters relating to the allocation and distribution of the Coupon Packages or Supplemental Coupons in this Settlement; [and] (d) all other matters relating to the implementation and enforcement of the Stipulation." (Compl. Ex. B at 48.) Article X, Paragraph 10.25 provides: "The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation." (Compl. Ex. B at 57.)

On April 29, 2004, the Tennessee court entered an order which preliminarily approved the proposed settlement. In that order, the Tennessee court directed that notice of the proposed settlement be given to the settlement class. The order also set a hearing date to determine the fairness, reasonableness, and adequacy of the proposed settlement. After holding a fairness hearing, the

Tennessee court gave final approval to the proposed settlement on July 21, 2004.

Almost one year after the Tennessee court approved the class settlement, the UST defendants entered into a Memorandum of Understanding ("MOU") on June 23, 2005 for the purpose of settling a class action suit brought on behalf of moist snuff consumers in Kansas and New York ("Kansas/New York settlement").[5] The settlement amount in the Kansas/New York class action exceeded the settlement amount in the Davis class action by several million dollars.[6] Subsequently, counsel for the Davis parties agreed to amend the Stipulation of Settlement to provide for the expiration of the MFN provision. As consideration for that amendment, the UST defendants agreed to distribute to the Davis action class members an additional aggregate face value of $2.5 million in coupons, and to pay defendant Ball an additional $500,000.00 in attorney's fees.

Approximately two weeks after the UST defendants entered into the Kansas/New York settlement MOU, the Tennessee court signed an order on July 7, 2005, permitting the proposed amendment to the Davis settlement agreement. The amendment allowed the MFN clause to expire on the date of the order's entry. The Davis class

---

[5]The UST defendants entered into the Kansas/New York class action MOU on June 23, 2005. The final settlement agreement in the Kansas/New York class action is dated August 5, 2005.

[6]According to the plaintiffs, the Kansas/New York class action settlement amount was $11.5 million more than the Davis settlement amount.

counsel neither obtained the consent of the named plaintiffs before agreeing to the amendment nor notified the named plaintiffs that the settlement agreement was being amended. The Tennessee court's approval of the amendment was therefore granted without prior notice to the class.

On or about January 17, 2006, the West Virginia plaintiffs named in this federal action filed a motion in the <u>Davis</u> action asking the Tennessee court to vacate the order approving the amendment. They argued that the termination of the MFN clause deprived them of the more favorable terms negotiated in the Kansas/New York settlement to which they were entitled under the original <u>Davis</u> settlement agreement; that the UST defendants and the <u>Davis</u> class counsel defendants had perpetrated a fraud upon the court and the class by agreeing to an expiration date for the MFN that would prevent the class from obtaining the benefits of the Kansas/New York settlement, which was reached immediately before the amendment was proposed to the state court; that the <u>Davis</u> class counsel defendants' interests in the terms of the amendment conflicted with those of the class plaintiffs; and that the Tennessee court should not have approved the amendment without notice to the class. After briefing and oral argument on May 22, 2006, the Tennessee court entered an order on August 7, 2006, denying the motion to vacate. The plaintiffs did not file an appeal of that order in state court.

Meanwhile, on July 7, 2006, the plaintiffs in this action, who are residents of West Virginia, filed suit in this Court, seeking class certification and enforcement of the terms of the Davis class action settlement as it existed before the July 7, 2005 amendment. The plaintiffs complain that they have been denied the benefit of the MFN clause as it relates to the Kansas/New York settlement because of the actions taken by the UST defendants and the Davis class counsel defendants to amend the settlement agreement without notice to the class of either the Kansas/New York settlement or the amendment extinguishing the MFN clause.

The complaint consists of five counts. Count I alleges breach of contract against the UST defendants. Count II alleges breach of fiduciary duty against the Davis class counsel defendants. Count III alleges unjust enrichment against the UST defendants. Count IV alleges unjust enrichment against the Davis class counsel defendants. Finally, Count V alleges conversion against the Davis class counsel defendants. The plaintiffs seek monetary relief in the form of a judgment against the defendants, jointly and severally, in favor of the plaintiffs for an amount in the range of $8,971,007.00 to $214.2 million, or an alternative judgment against the UST defendants for an amount in the range of $8,971,007.00 to $214.2 million, or an alternative judgment against the Davis class counsel defendants for an amount in the range of $8,971,007.00 to $214.2 million. The plaintiffs request that this Court order the

UST defendants to relinquish the $8,971,007.00 to $214.2 million that they allege UST has retained as a result of the July 7, 2005 amendment to the _Davis_ settlement and order the _Davis_ class counsel defendants to relinquish the $500,000.00 they have retained as a result of the July 7, 2005 amendment to the _Davis_ settlement. The plaintiffs further seek an award of unspecified punitive damages and reasonable attorney's fees.

The defendants ask this Court to dismiss the complaint. In support of their various requests to dismiss, all of the defendants argue, among other things, that the Tennessee state court is the only proper forum for adjudicating the plaintiffs' claims. The UST defendants believe that this Court lacks subject matter jurisdiction under the _Rooker-Feldman_ doctrine, and, alternatively, that the _Davis_ settlement agreement's exclusive jurisdictional provision, together with the court order approving it, divests this Court of subject matter jurisdiction. The Cohen and Cuneo defendants similarly claim that the _Rooker-Feldman_ doctrine precludes this Court from adjudicating this action. Alternatively, they argue that the _Davis_ settlement agreement's exclusive jurisdictional provision requires dismissal by this Court on the basis of contractual release. Defendant Ball argues that 28 U.S.C. § 1738, the Full Faith and Credit Statute, requires this Court to decline to exercise its jurisdiction because the Tennessee state

court entered an order which explicitly retained jurisdiction over settlement-related issues in the Davis action.[7]

In response, the plaintiffs contend that the Rooker-Feldman doctrine erects no bar to collateral attacks on a state court judgment where due process and adequate representation were lacking in the state court class action proceedings, or where the subsequent federal action seeks redress for injury that was not caused by the state court's decision itself. The plaintiffs allege that both of these circumstances are present here. The plaintiffs also contend that the Tennessee court does not have exclusive jurisdiction over the plaintiffs' claims against the Davis class counsel for breach of fiduciary duty, unjust enrichment, and conversion because these issues are not related to the settlement agreement.

Although the defendants have raised multiple grounds upon which to dismiss this action, this Court must first determine whether it has subject matter jurisdiction. If subject matter jurisdiction is lacking, then the action must be dismissed, and other grounds for dismissal need not be addressed. In light of the defendants' collective reliance on either the Rooker-Feldman

---

[7]Defendant Ball also asserts that he is not subject to the personal jurisdiction of this Court. However, as discussed below, this Court finds that the Circuit Court for Jefferson County, Tennessee is the proper forum for this action. Therefore, defendant Ball's arguments concerning personal jurisdiction will not be addressed.

doctrine, the Tennessee court's order adopting the <u>Davis</u> settlement agreement and expressly retaining jurisdiction, or both, this Court examines whether either basis requires dismissal of this case.

### III. <u>Applicable Law</u>

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982); <u>Mims v. Kemp</u>, 516 F.2d 21 (4th Cir. 1975). A lack of subject matter jurisdiction may be asserted at any time by any interested party either in the form of the answer or in the form of a suggestion to the court prior to final judgment. 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350, at 201-02 (2d ed. 1990). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. <u>See</u> <u>Materson v. Stokes</u>, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties

or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. See Fed. R. Civ. P. 12(h)(3).

In this case, the defendants have moved to dismiss for lack of subject matter jurisdiction, and rely, in part, upon the Rooker-Feldman doctrine. The Rooker-Feldman doctrine developed out of the United States Supreme Court's exclusive jurisdiction of appeals from state courts' final judgments. See 28 U.S.C. § 1257. Because federal district courts may not exercise appellate jurisdiction over final state court judgments, the Rooker-Feldman doctrine bars federal district court review of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005). The Rooker-Feldman doctrine thus applies to cases in which a state court has rendered a final judgment; the federal plaintiff has lost in state court; the federal plaintiff complains of injuries caused by the state court judgment; the federal plaintiff seeks district court review and reversal of the state court judgment; and the state court rendered its judgment before the federal court proceedings began. Id. Issues that are "inextricably intertwined" with those adjudicated by the state court are also beyond the scope

of district court review.  Id. at 286 (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87 (1983)).

A district court is not barred from "exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court."  Id. at 293. A district court may adjudicate "some independent claim" that a plaintiff raises in federal court, even if it is "one that denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party . . . ."  Id.  In such a case, the federal court has subject matter jurisdiction, and the state's laws governing preclusion determine whether the defendant prevails. Id.

IV.  Discussion

This court must first determine whether the circumstances of this case require the application of the Rooker-Feldman doctrine. Upon review of the record and the parties' pleadings, this Court concludes that, although the first three prongs of Rooker- Feldman appear to be met, the fourth prong of Rooker-Feldman is not satisfied and, therefore, the doctrine does not apply to the facts of this case.  Consequently, this Court has subject matter jurisdiction.

The Rooker-Feldman doctrine will apply here if (1) the federal plaintiffs lost in the Tennessee court; (2) the federal plaintiffs complain of injuries caused by a judgment rendered by

13

the Tennessee state court; (3) the federal plaintiffs are asking this Court to review and reject the Tennessee court judgment; and (4) the Tennessee court judgment was rendered before the proceedings were begun in this Court. See Exxon Mobil Corp., 544 U.S. at 284.

Here, the federal plaintiffs lost in the Tennessee state court. On July 7, 2005, the Tennessee state court entered an order approving the terms of the Davis parties' proposed amendment to the settlement. That amendment terminated the MFN clause--and with it any benefits to the plaintiffs that would have subsequently accrued under it--effective as of the date the order was entered. The named plaintiffs in this action, who were class plaintiffs in the Davis action, filed a motion to vacate the order approving the settlement. In that motion, the plaintiffs raised the same issues they now present to this Court. The Tennessee state court denied the motion. Accordingly, this Court concludes that the first prong of Rooker-Feldman is met.

Second, the federal plaintiffs complain of injuries caused by a judgment rendered by the Tennessee state court. According to the plaintiffs, they are not seeking redress for injuries caused by the Tennessee state court's order, but rather injuries caused by the conduct of the defendants. The plaintiffs argue that because their claims arise from the conduct of the defendants rather than the Tennessee state court's order, this action falls outside the reach

of <u>Rooker-Feldman</u>.  This argument lacks merit.  "[I]f a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself."  <u>McCormick v. Braverman</u>, 451 F.3d 382, 394 (6th Cir. 2006).  "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment."  <u>McKithen v. Brown</u>, 481 F.3d 89, 97 (2d Cir. 2007).  <u>Willner v. Frey</u>, 243 Fed. Appx. 744, 746 (4th Cir. 2007)(unpublished).

The essence of the plaintiffs' complaint is that the defendants have circumvented the original settlement agreement by amending it in such a way as to terminate the MFN provision before pay-out under that provision by the UST defendants would have been required.  What the plaintiffs fail to recognize is that but for the Tennessee court's order approving the amendment, the defendants' conduct would have remained unsanctioned and, therefore, a violation of the settlement agreement.  However, the Tennessee court's order triggered the events of which the plaintiffs complain, namely the expiration of the MFN clause, the issuance of additional coupons by the UST defendants for an amount lower than the plaintiffs would have been entitled under the Kansas/California settlement, and the payment of additional attorney fees to the <u>Davis</u> class counsel defendants.  Because the

defendants' conduct proceeded with the Tennessee court's approval of the settlement amendment, this Court finds that the plaintiffs complain of alleged injuries caused by the state-court judgment. Accordingly, the second prong to Rooker-Feldman is satisfied.

Third, the federal plaintiffs are asking this Court to review and reject the Tennessee court judgment approving the settlement amendment. Although the plaintiffs couch their claims in terms of breach of contract, breach of fiduciary duty, unjust enrichment, and conversion, they also state that they seek to enforce the settlement agreement as it stood before the Tennessee state court approved the amendment. In other words, the plaintiffs want the benefits of the MFN provision; they want the UST defendants in this action to relinquish the monetary equivalent of the difference between the face value of the coupons to which the Davis class plaintiffs would have been entitled under the MFN clause in light of the Kansas/New York settlement and the face value of the coupons that were distributed as a result of the amendment extinguishing the MFN provision; and they want the Davis class counsel defendants to relinquish the monetary gain that counsel received as a result of the amendment. In light of the relief the plaintiffs seek, this Court concludes that they have filed suit in federal court to seek redress for an injury caused by the state-court decision. Therefore, this action meets the third prong of the Rooker-Feldman doctrine.

Even though the first three prongs under Rooker-Feldman are met, the fourth prong--whether the state-court judgment was rendered before the federal proceedings began--is not satisfied. State proceedings are generally deemed to have "ended" for purposes of Rooker-Feldman in three situations: (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (2) when the state action has reached a point where neither party seeks further action, such as a case where a lower state court has issued a judgment and the losing party has allowed the time for appeal to expire; and (3) where only state law or purely factual questions remain in a case after the state court proceedings have finally resolved all federal questions presented in the action. Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005) (citing Exxon Mobil Corp, 544 U.S. at 290-94). Rooker-Feldman precludes jurisdiction only when the federal litigation is initiated after the state proceedings have ended. Rooker-Feldman does not deprive a court of jurisdiction if the federal action is initiated before the state proceedings have ended. Id. at 291.

In this case, the relevant inquiry is whether the state action had reached a point where neither party was seeking further action at the time the federal action was filed. The answer to that inquiry depends upon whether the plaintiffs, as the losing party in

17

state court, allowed the time for appeal to run before filing this suit.  Here, the Tennessee state court granted approval of the settlement amendment by order dated July 7, 2005 and identified by the Tennessee court as a final judgement.  The plaintiffs did not appeal.[8]  Normally, when the losing party allows the time for appeal to expire, the state court proceedings have ended.  However, the plaintiffs claim that they first learned of the amendment to the settlement agreement after the time for an appeal in state court had run, and that upon so learning, they immediately filed a motion in the Tennessee court to vacate the July 7, 2005 order pursuant to Tennessee Rule of Civil Procedure 60.02.[9]  Before the Tennessee court ruled upon the plaintiffs' motion,[10] the plaintiffs filed their federal lawsuit.  Under Tennessee law, a party may appeal a trial court decision granting or denying a Rule 60.02 motion for relief from a final judgment.  See Tennessee Rule of

---

[8]The plaintiffs claim that they received no notification of the amendment before the Tennessee court approved it, and no notification of the order granting approval.  Because the class plaintiffs were not notified of the proposed amendment or of the court's grant of approval, they were not on notice of the need to file an appeal and consequently did not do so.

[9]The plaintiffs appear to have filed their motion to vacate in the Circuit Court for Jefferson County, Tennessee on or about January 17, 2006.  A hearing on the motion was held on May 22, 2006.  Transcripts of that hearing were not filed with this Court, and the parties do not state whether the judge in that action made an oral ruling at the hearing.

[10]The Tennessee court denied the plaintiffs' motion in its entirety by order dated August 8, 2006.  The plaintiffs filed suit in this Court on July 7, 2007.

Appellate Procedure 4, Advisory Comment to Subdivision (a); <u>Black</u>
<u>v. Black</u>, 166 S.W.3d 699, 700 (Tenn. 2005). The plaintiffs' filing
of a Rule 60.02 motion to vacate was to keep open the state court
proceedings for <u>Rooker-Feldman</u> purposes until such time as the
Tennessee court denied the motion and the plaintiffs allowed the
time for appeal to expire. Under the particular procedural posture
of this action, this Court finds that the federal litigation was
initiated before the state proceedings ended. Accordingly, this
Court concludes that its jurisdiction is not barred under the
<u>Rooker-Feldman</u> doctrine.[11]

Despite the absence of a jurisdictional bar under <u>Rooker-</u>
<u>Feldman</u>, this Court nevertheless finds that it must decline to
exercise its jurisdiction over this dispute because the <u>Davis</u>
Stipulation of Settlement provides for the exclusive jurisdiction
of the Tennessee court over all matters related to the settlement
and its implementation and enforcement. All of the issues the
plaintiffs raise in this action are related, directly or
indirectly, to the <u>Davis</u> settlement and/or its implementation or
enforcement. Additionally, the Tennessee court's July 21, 2004
order incorporates the settlement's provisions by which the
plaintiffs agree to that court's exclusive jurisdiction. "Absent

_____

[11]Normally, the next inquiry would be whether the plaintiffs'
claims asserted in this action are precluded by the rules of res
judicata. For the reasons set forth below, this Court declines to
exercise its jurisdiction and, therefore, does not address whether
res judicata bars the plaintiffs' claims.

a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced." Vulcan Chem. Technologies, Inc. v. Barker, 297 F.3d 332 (4th Cir. 2002).

In this action, the plaintiffs have not alleged or demonstrated that the forum-selection clause in the settlement agreement is unreasonable or was imposed as the result of fraud or unequal bargaining power. Nevertheless, the plaintiffs attempt to escape the jurisdictional restriction imposed by the forum-selection clause in the Davis settlement agreement by contending that the Davis class representatives and Davis class counsel did not adequately represent the interests of the absent class members. Consequently, the plaintiffs urge, the exclusive jurisdictional provision of the settlement agreement cannot bind them. All of the issues that the plaintiffs raise in this action are related, directly or indirectly, to the parties' settlement and its implementation or enforcement; because the parties' Stipulation of Settlement provides for the exclusive jurisdiction of the Tennessee court over all matters related to the settlement and its implementation and enforcement; and because the Tennessee court's July 21, 2004 order incorporates the parties' provisions concerning that court's continued jurisdiction.

Essentially, the plaintiffs argue that the Davis class representatives and the Davis class counsel have not adequately

represented absent class members, and, therefore, the Tennessee court's retention of jurisdiction over the settlement cannot bind absent class members because it was the result of inadequate representation. See, e.g., Hansberry v. Lee, 311 U.S. 32 (1940); Phillips Petroleum v. Shutts, 472 U.S. 797 (1985). On the facts of this action, the plaintiffs' argument is unavailing. The plaintiffs simultaneously seek to repudiate the jurisdictional provisions because of purportedly inadequate representation and to enforce the MFN clause contained in the very same agreement. The plaintiffs cite no authority--and this Court has found none--for their position that they may repudiate the jurisdictional provisions of the settlement agreement on grounds of inadequate representation without also abandoning the settlement's benefits, which were obtained by the same representation. In the absence of authority to the contrary, this Court finds that the plaintiffs' claims may go forward, if at all, subject to the jurisdictional provisions set forth in the settlement agreement.

Alternatively, the plaintiffs argue that even if the forum-selection clause of the settlement agreement applies to their claims against the UST defendants, the same limitations do not apply to the claims they have asserted against the Davis class counsel defendants. This is so, the plaintiffs contend, because their claims against the Davis class counsel defendants are not related to the settlement or its implementation or enforcement.

According to the plaintiffs, they are not seeking to enforce the settlement as against the _Davis_ class counsel defendants, but rather they are seeking damages caused by the alleged malpractice and malfeasance of the _Davis_ class counsel defendants, who are not parties to the settlement. This Court is not persuaded. Although the _Davis_ class counsel defendants are not parties to the settlement, all of the claims brought by the plaintiffs in this action, including those brought against the _Davis_ class counsel defendants, are related to the settlement.

In fact, the amendment to the settlement, the settlement itself, or both, serve as the linchpin for each of the plaintiffs' allegations. For example, in Count I (breach of contract against the UST defendants), the plaintiffs assert that the UST defendants failed to distribute to the plaintiffs and class members millions of dollars worth of additional coupons, in breach of the MFN clause and the Stipulation of Settlement. (Compl. at 13, ¶ 69.) The plaintiffs further claim in Count I that "[b]y amending the _Davis_ settlement on July 7, 2005, the UST defendants committed an anticipatory breach of the _Davis_ Stipulation of Settlement, and/or repudiated the Stipulation of Settlement." (Compl. at 13, ¶ 67.)

In Count II (breach of fiduciary duty against the _Davis_ class counsel defendants), the allegations of breach of fiduciary duty hinge upon the _Davis_ class counsel's failure to notify the West Virginia class representative of the settlement or the amendment

22

and upon the attorney's fees that the <u>Davis</u> class counsel received in exchange for liquidating the MFN clause contained in the settlement. (Compl. at 14, ¶¶ 74-78.)

In Count III (unjust enrichment against the UST defendants), the plaintiffs rely upon the UST defendants' obligations under the settlement's MFN clause to claim that the UST defendants unjustly enriched themselves by entering into an amendment that extinguished the MFN clause without disclosing to the court that the clause had already been triggered by a more favorable settlement agreement in another case.

Count IV (unjust enrichment against the <u>Davis</u> class counsel defendants) alleges that the <u>Davis</u> class counsel defendants were awarded attorney's fees and expenses in the amount of $6.08 million as full compensation for their services in achieving the settlement. (Compl. at 17, ¶ 93.) Count IV further alleges that the <u>Davis</u> class counsel defendants unjustifiably received an additional $500,000.00 payment as consideration for agreeing to the amendment of the settlement. (Compl. at 17, ¶ 94.)

Finally, in Count V (conversion against the <u>Davis</u> class counsel defendants), the plaintiffs claim that the <u>Davis</u> class members had a fully vested entitlement to the benefits conferred by the MFN clause as of July 21, 2004, when the Tennessee court approved the settlement. (Compl. 18, ¶ 102.) The plaintiffs also allege in Count V that the <u>Davis</u> class counsel defendants converted

the MFN clause benefits that the plaintiffs and the class should have received to counsel's own benefit in the form of an additional $500,000.00 in attorney's fees as consideration to amend the settlement. (Compl. 18, ¶ 103.)

As illustrated above, each issue presented in this action is related to the settlement, to the implementation or enforcement of the settlement, or to the amendment to the settlement. Therefore, all of the plaintiffs' claims before this Court, including those brought against the <u>Davis</u> class counsel defendants, are subject to the jurisdictional terms of the settlement agreement. To the extent that the plaintiffs argue that the lack of notice concerning the amendment should trump the settlement agreement's exclusive jurisdiction clause, as adopted by the Tennessee court in its July 21, 2004 order, this, too, is an issue properly raised in the Tennessee court. <u>See, e.g.</u>, <u>Magnolia v. Connecticut General Life Ins. Co.</u>, 157 F. Supp. 2d 583 (D. Md. 2001) (holding that court which issued final settlement order in class action was proper forum for class members to argue that they were not bound by terms of final settlement order because of lack of notice). Accordingly, this Court finds that the Circuit Court for Jefferson County, Tennessee is the proper forum for litigating this action, and this Court will decline to exercise jurisdiction.

## V. Conclusion

For the reasons set forth above, the motion to dismiss by defendant Gordon Ball (Doc. 30) is GRANTED, the motion to dismiss by defendants Daniel Cohen and Cuneo Gilbert & LaDuca, L.L.P. (Doc. 38) is GRANTED, and the motion to dismiss by defendants U.S. Smokeless Tobacco Company, United States Tobacco Sales and Marketing Company, Inc., United States Tobacco Manufacturing Company, Inc., and UST, Inc. (Doc. 28) is GRANTED. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    May 20, 2008


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE